## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMETRIUS PIRL, | ) | |
| | ) | CIVIL ACTION NO. 3:19-cv-208 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| SERGEANT GARY RINGLING, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

## I.  Introduction

Trial in this matter concluded on August 18, 2022. (ECF No. 154). Currently pending before the Court are the following three post-trial motions: (1) Plaintiff Demetrius Pirl's ("Mr. Pirl") "Petition for Attorneys' Fees and Expenses" (ECF No. 160); (2) Defendant Gary Ringling's ("Mr. Ringling")[1] "Motion for Judgment as a Matter of Law or Remittitur to Reduce Punitive Damages" (ECF No. 162); and (3) Mr. Pirl's "Motion for Sanctions Under Rule 11(B)(1)[.]" (ECF No. 172). All three Motions are fully briefed (ECF Nos. 160, 161, 162, 164, 165, 169, 172, 173, 175, 177, 178, 181) and ripe for disposition.

For the reasons that follow, the Court will: (1) **GRANT IN PART** and **DENY IN PART** Mr. Pirl's Petition for Attorneys' Fees and Expenses (ECF No. 160); (2) **GRANT IN PART** and **DENY IN PART** Mr. Ringling's Motion for Judgment as a Matter of Law or Remittitur (ECF No. 162); and **DENY** Mr. Pirl's Motion for Sanctions. (ECF No. 172).

---

[1] The Court notes that Mr. Pirl's claims against a second Defendant, Eric Tice ("Mr. Tice"), were not submitted to the jury, for reasons the Court discusses below. Accordingly, it is only Mr. Ringling that is now filing and responding to post-trial motions.

Specifically, regarding Mr. Pirl's Petition for Attorneys' Fees and Expenses, the Court will award Mr. Pirl $15,001.50 in attorneys' fees and $1,367.58 in costs. Regarding Mr. Ringling's Motion for Judgment as a Matter of Law or Remittitur, the Court will deny Mr. Ringling's Motion to the extent he seeks judgment as a matter of law, but the Court will reduce the jury's award of punitive damages to $10,000.00. Finally, the Court will deny Mr. Pirl's Motion for Sanctions because Mr. Pirl failed to comply with the 21-day safe harbor provision, and because the Court finds that Mr. Pirl's motion would be unavailing even if he had complied with that provision.

## II.     Background

### A.     Procedural History

On April 29, 2020, the Court received Mr. Pirl's pro se Amended Complaint—the document that became the operative complaint in this matter and remained the operative complaint through trial. (ECF No. 25). In his Amended Complaint, Mr. Pirl advanced Eighth Amendment and Negligence claims against both Mr. Ringling and Mr. Tice (collectively "Defendants"). (*See id.*).

On October 30, 2020, Defendants filed a Motion for Summary Judgment, requesting that the Court "enter summary judgment in their favor and against [Mr. Pirl] on all claims in the Amended Complaint." (ECF No. 39).

On March 29, 2021, the Magistrate Judge issued a Report and Recommendation regarding the Motion for Summary Judgment. (ECF No. 51). The Magistrate Judge recommended that the Court grant the Motion in part and deny it in part, permitting the following claims to advance to trial: (1) Mr. Pirl's Eighth Amendment claim against Mr. Ringling in his personal capacity, (2) Mr.

Pirl's Negligence claim against Mr. Ringling, and (3) Mr. Pirl's Eighth Amendment claim against Mr. Tice. (*Id.* at 23–32).

On April 12, 2021, Defendants filed a "Motion for Extension of Time to File Objections" to the Report and Recommendation, noting that their objections were due by April 12, 2021, and requesting a fourteen (14) day extension of time within which to file objections. (ECF No. 53). On April 13, 2021, the Court granted Defendants' Motion for an Extension, stating that Defendants had until April 26, 2021, to file objections to the Report and Recommendation. (ECF No. 54). However, Defendants did not file any such objections.

On September 15, 2021, the Court issued an Order accepting "in whole the findings and recommendations of [the Magistrate Judge] in this matter." (ECF No. 64 at 2). Accordingly, the Court granted in part and denied in part Defendants' Motion for Summary Judgment. (*Id.*).

On October 4, 2021, Attorneys Benjamin D. Webb and George M. Kontos entered their appearances on behalf of Mr. Pirl. (ECF No. 67, 68).

On February 24, 2022, the Court issued a Trial Order, indicating that trial would begin on August 15, 2022. (ECF No. 87).

**B.      Mr. Pirl's Pretrial Statement**

The Court briefly reviews Mr. Pirl's Pretrial Statement in order to outline his allegations in this case. (ECF No. 90).[2]

---

[2] The Court notes that it is resolving the three post-trial motions without a transcript of the trial in this matter. The Court permitted Mr. Ringling an opportunity to obtain the trial transcript and rely upon that document when submitting his brief. (ECF No. 168). However, Mr. Ringling did not order a transcript prior to the status conference that the Court held on November 28, 2022. (ECF No. 176). At that conference, Mr. Ringling indicated that he was prepared to move forward without a transcript, and the Court stated that it would rule on the post-trial motions without a transcript. (*Id.*).

According to Mr. Pirl, he was incarcerated at the State Correctional Institution at Somerset ("SCI Somerset") in 2019. (*Id.* at 2). On July 4, 2019, Mr. Ringling called Mr. Pirl out from his cell to the front of his housing unit. (*Id.* at 2–3). Mr. Ringling then:

> [A]sked [Mr. Pirl] "what type of cheese do you want?" Confused, [Mr. Pirl] asked [Mr.] Ringling what he meant by the question, to which [Mr.] Ringling responded, "What type of cheese do you want cause you ratted to get out of the hole?" Surrounded by prisoners, [Mr. Pirl] asked [Mr.] Ringling to not call him a rat. [Mr.] Ringling continued to repeat himself and further yelled that [Mr. Pirl] "snitched to get out of the hole." [Mr. Pirl], out of fear of being considered an informant by the other inmates, once more asked [Mr.] Ringling to not call him a snitch, to which [Mr.] Ringling remained undeterred and continued labeling [Mr. Pirl] a rat. [Mr. Pirl], at this point, denied that he was an informant and began to walk back to his cell. As [Mr. Pirl] was walking away, [Mr.] Ringling placed his hands on each of his cheeks so as to cup his mouth and yelled, "Attention B-Block, if anybody wants or needs cheese go to [Mr.] Pirl's cell, 49, cause he is a rat!" [Mr.] Ringling subsequently called other prisoners over to his desk, where he again proclaimed, "you know [Mr.] Pirl is a rat."

(*Id.* at 3).

Further, Mr. Pirl alleged that, on two separate instances on October 9, 2019, he was attacked by other inmates. (*Id.* at 4). According to Mr. Pirl, during these attacks, his assailants made statements such as "stop snitching" and "this is for Ringling." (*Id.*).

Finally, Mr. Pirl noted that Mr. Tice was the Facility Manager at SCI Somerset. (*Id.* at 1). Mr. Pirl stated that he was asserting an Eighth Amendment claim against Mr. Tice because of Mr. Tice's "failure to take any preventative actions so as to prevent [Mr. Pirl's] harm when he had personal knowledge of [Mr.] Ringling's conduct in publicly labeling [Mr. Pirl] a 'rat/snitch.'" (*Id.*).

---

Therefore, because the Court does not have a transcript of the trial, the Court looks to Mr. Pirl's Pretrial Statement to provide an outline of the factual allegations in this case. In doing so, the Court does not take Mr. Pirl's assertions in that document as established facts. To be sure, Mr. Pirl won a jury verdict in this case. (ECF No. 158). However, the Court obviously does not know which facts the jury believed and which facts the jury did not believe. Accordingly, the Court stresses that it offers these factual allegations for background purposes only.

C.      Trial

Trial in this matter lasted from August 15, 2022, until August 18, 2022. (ECF Nos. 149, 150, 151, 154).

On August 17, 2022, Defendants made an Oral Motion for Judgment as a Matter of Law. (ECF No. 151). On that same day, the Court granted the Motion with respect to Mr. Pirl's claim against Mr. Tice. (*Id.*; ECF No. 153). However, the Court denied the Motion with respect to Mr. Pirl's Eighth Amendment and Negligence claims against Mr. Ringling. (ECF Nos. 151, 153). Therefore, Mr. Pirl's Eighth Amendment and Negligence claims against Mr. Ringling were both submitted to the jury on August 18, 2022.

On that date, the jury returned a verdict in favor of Mr. Pirl and against Mr. Ringling in the amount of $1.00 in nominal damages and $25,000.00 in punitive damages. (ECF No. 158).

Specifically, with respect to Mr. Pirl's Eighth Amendment claim, the jury found the following: (1) Mr. Ringling, while acting under the color of state law, was deliberately indifferent to Mr. Pirl's substantial risk of serious harm; (2) Mr. Ringling's deliberate indifference caused harm to Mr. Pirl; (3) Mr. Pirl failed to prove that Mr. Ringling's deliberate indifference caused *physical injury* to Mr. Pirl; and (4) Mr. Pirl was therefore entitled to $0 in compensatory damages and $1.00 in nominal damages. (*Id.* at 1–3).

With respect to Mr. Pirl's Negligence claim, the jury found the following: (1) Mr. Ringling was not acting within the scope of his employment at the times relevant to Mr. Pirl's negligence claim against him; (2) Mr. Ringling was negligent; (3) Mr. Ringling's negligence was a factual cause of harm to Mr. Pirl; and (4) Mr. Pirl failed to prove that he sustained compensable damages as a result of Mr. Ringling's negligence. (*Id.* at 4–7).

Finally, with respect to Mr. Pirl's request for punitive damages, the jury found that Mr. Ringling had acted maliciously or wantonly relative to Mr. Pirl, and that it was appropriate to award punitive damages against Mr. Ringling in the amount of $25,000.00. (*Id.* at 9–10).

After the jury returned its verdict, Mr. Ringling orally renewed his Motion for Judgment as a Matter of Law. (ECF No. 154). The Court denied that Motion without prejudice to Mr. Ringling filing a written version of his Motion. (*Id.*).

III. **Mr. Ringling's "Motion for Judgment as a Matter of Law or Remittitur to Reduce Punitive Damages" (ECF No. 162)**

Because the Court's decision with respect to Mr. Ringling's Motion for Judgment as a Matter of Law or Remittitur has bearing on the Court's resolution of Mr. Pirl's Motion for Attorneys' Fees, the Court will first resolve Mr. Ringling's Motion.

In doing so, the Court begins by outlining the law governing Mr. Ringling's Motion. The Court then reviews and analyzes the three arguments Mr. Ringling offers in support of his Motion. (ECF No. 178).

A. **Legal Standard**

1. **Rule 50(b) Motion: Judgment as a Matter of Law**

Following trial, Rule 50(b) "permits a party to renew a motion for judgment as a matter of law made under Rule 50(a)." *Guy Chem. Co., Inc. v. Romaco, Inc.,* No. 3:06-CV-96, 2010 WL 11566506, at *1 (W.D. Pa. July 28, 2010). The question the Court must consider is the same "as that raised by a Rule 50(a) motion, namely, whether 'a reasonable jury would … have a legally sufficient evidentiary basis to find for [Mr. Pirl]' on the various issues raised in [Mr. Ringling's] motion." *Id.*

A Rule "50 motion 'should only be granted if the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" *Baran v. ASRC Fed., Mission Solutions*, 401 F. Supp. 3d 471, 479 (D.N.J. 2019) (quoting *Raiczyk v. Ocean Cty. Veterinary Hosp.*, 377 F.3d 266, 269 (3d Cir. 2004)). The "key 'question is not whether there is literally *no evidence* supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.'" *Id.* (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003) (emphasis in original)).

In resolving a Rule 50 motion, the Court "must 'disregard all evidence favorable to the moving party that the jury is not required to believe[,]'" that is, the Court should "'give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 480 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

### 2. Rule 59(e) Motion: Remittitur

Federal Rule of Civil Procedure 59(e) provides, "in relevant part: '**(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." *Jacobs v. Penn. Dep't of Corr.*, No. 04-CV-1366, 2011 WL 2295095, at *3 (W.D. Pa. June 7, 2011) (quoting FED. R. CIV. P. 59(e)) (emphasis in original).

A motion to "alter or amend judgment is subject to the 'sound discretion of the district court.'" *Id.* (quoting *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001)). Further, a "jury's damages award will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award." *Thabault v. Chait*, 541 F.3d 512, 532 (3d Cir. 2008).

### B.   Mr. Ringling's First Argument

#### 1.   The Parties' Arguments

Mr. Ringling's first argument in support of his Motion is that Mr. Pirl did not properly exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). (ECF No. 178 at 2). Specifically, Mr. Ringling contends that, based on Exhibit F, which was admitted at trial, it is "undisputed that [Mr. Pirl] initiated this action on December 6, 2019[,] while the investigation into the claims made in the operative grievance … was still pending[,]" meaning that Mr. Pirl failed to properly exhaust his administrative remedies before filing suit. (Id.). Further, Mr. Ringling argues that the relevant grievance policy required Mr. Pirl to assert, in his grievance, the relief that he was seeking. (Id.). Mr. Ringling therefore contends that because Mr. Pirl "did not include a request for monetary relief in his initial grievance and instead sought to amend his grievance to include a request for monetary relief after he initiated this lawsuit[,] … [Mr. Pirl] cannot recover any monetary damages now." (Id. at 3).

In response, Mr. Pirl advances two arguments of his own. (ECF No. 165 at 2–3). First, Mr. Pirl asserts that the Magistrate Judge plainly resolved the exhaustion issue in her Report and Recommendation, and this Court adopted her conclusions in full. (Id.). Therefore, because the Court has "already addressed this issue, it is the law of the case." (Id. at 2). Second, Mr. Pirl notes that the Court granted his motion in limine to preclude Mr. Ringling from offering evidence pertaining to administrative exhaustion at trial. (Id.). Accordingly, "there is no record evidence concerning this issue because it never was discussed or introduced into evidence at trial." (Id.).

#### 2.   The Court's Conclusion at Summary Judgment That Mr. Pirl Exhausted His Administrative Remedies is the Law of This Case, and Mr. Ringling Has Failed to Establish That the Court Should Revisit Its Earlier Decision

For reasons the Court outlines below, the Court finds that: (1) it is the law of this case that Mr. Pirl exhausted his administrative remedies prior to filing suit and (2) Mr. Ringling has failed to establish that the Court should revisit its initial decision on this issue.

### a.    The Law of the Case Doctrine Applies

Unlike the more "'precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'" *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The "[l]aw of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Id.* (internal quotation marks and citation omitted); *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) (holding that the law of the case doctrine applies to a pre-trial ruling that constitutes judgment as a matter of law).

Here, in her Report and Recommendation, the Magistrate Judge stated that "administrative remedies were unavailable to [Mr. Pirl] under DC-ADM 804 at the time he brought this action, and he has fully discharged the PLRA's exhaustion requirement." (ECF No. 51 at 16) (internal quotation marks and citation omitted). Further, this Court adopted "in whole the findings and recommendations of" the Magistrate Judge. (ECF No. 64 at 2). Therefore, this Court found, as a matter of law, that Mr. Pirl had exhausted his administrative remedies prior to filing suit in this matter. Accordingly, the law of the case doctrine plainly applies to that finding.

*Williams*, 130 F.3d at 573 (holding that the law of the case doctrine applies to a pre-trial ruling that constitutes judgment as a matter of law).[3]

> **b.     Mr. Ringling Has Failed to Establish That the Court Should Revisit Its Initial Decision**

The law of the case doctrine "does not restrict a court's power but rather governs its exercise of discretion." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439 (internal quotation marks and citation omitted). The Supreme Court has explained the scope of this discretion as follows:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath[] to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (internal quotation marks and citation omitted).

In addition to the extraordinary circumstances outlined by the Supreme Court, the Third Circuit has recognized the following four extraordinary circumstances/exceptions to the law of the case doctrine that permit revisiting a prior decision: "(1) new evidence is available; (2) a supervening new law has been announced; (3) the order clarifies or corrects an earlier, ambiguous ruling; and (4) where a prior ruling, even if unambiguous, might lead to an unjust result." *Baran v. ASRC Fed., Mission Solutions*, 401 F. Supp. 3d 471, 481–82 (D.N.J. 2019) (citing *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439)). However, if a "trial judge decides to change or

---

[3] Indeed, in this Court's Memorandum Opinion and Order resolving the motions in limine prior to trial, the Court found the following: "[the Magistrate Judge] and this Court have already ruled that [Mr.] Pirl has exhausted his administrative remedies as a matter of law. Therefore, Defendants are precluded from introducing evidence that [Mr.] Pirl did not exhaust his administrative remedies at trial." (ECF No. 143 at 12–13).

explain an earlier ruling, he should state his reasons on the record and also take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439 (internal quotation marks and citation omitted).

Here, Mr. Ringling's two arguments do not satisfy any of the five extraordinary circumstances/exceptions to the law of the case doctrine set forth by the Supreme Court and Third Circuit, and they therefore do not lead the Court to revisit its initial decision on exhaustion.

Indeed, Mr. Ringling argues that, based on Exhibit F, it is "undisputed that [Mr. Pirl] initiated this action … while investigation into the claims made in the operative grievance … was still pending[,]" meaning that he failed to exhaust his administrative remedies. (ECF No. 178 at 2). However, Mr. Ringling does not expound upon this argument or reference the precise document within Exhibit F that supports his assertion. (*Id.*). Further, the Magistrate Judge referenced most, if not all of the documents in Exhibit F in her Report and Recommendation. (ECF No. 51 at 5–7; ECF No. 156 at 2; D-F). Therefore, Mr. Ringling has not pointed to any new evidence that would cause the Court to reconsider its initial ruling.[4]

---

[4] Further, even assuming that Mr. Ringling had pointed to new evidence regarding the ongoing nature of the investigation into Mr. Pirl's grievance, that new evidence would not alter the Court's conclusion regarding exhaustion of administrative remedies. Indeed, after Mr. Pirl filed his grievance relative to the events of October 9, 2019, the prison responded with a document containing: (1) a notice of investigation and (2) an indication that staff required an extension in order to respond to Mr. Pirl's grievance. (ECF No. 51 at 16). Pursuant to the prison's policy, the "Facility Grievance Coordinator may request an extension of 10 additional working days to respond if an investigation of the grievance is ongoing." (*Id.*). Based on this extension, the prison's response to Mr. Pirl's grievance was due by November 19, 2019. (*Id.*). However, the prison did not issue its response by that time. (*Id.*). Mr. Pirl filed his Complaint in this matter on December 6, 2019. (*Id.*).

In light of the foregoing, the Magistrate Judge found that "administrative remedies were unavailable to [Mr. Pirl] under DC-ADM 804 at the time he brought this action, and he has fully discharged the PLRA's exhaustion requirement." (*Id.*) (internal quotation marks and citation omitted). Relatedly, the Magistrate Judge recommended that the Court reject "Defendants' argument that [Mr. Pirl] failed to include all necessary detail in his grievance pursuant to DC-ADM 804, including his failure to … request monetary

Mr. Ringling also argues that, under the relevant grievance policy, Mr. Pirl was required to state the relief he was seeking in his grievance. (ECF No. 178 at 2). Mr. Ringling therefore asserts that because Mr. Pirl did not state the relief that he was seeking in his initial grievance, he did not properly exhaust his administrative remedies, and he "cannot recover any monetary damages" in this case. (*Id.* at 2–3). However, the Magistrate Judge addressed this very issue on at least one occasion in her Report and Recommendation. (ECF No. 51 at 16–17). Therefore, Mr. Ringling has not pointed to a supervening new law that would cause the Court to reconsider its initial ruling.

In short, the Court has no indication that any of the following extraordinary circumstances/exceptions to the law of the case doctrine are present in this case: (1) a clearly erroneous initial decision that would make a manifest injustice; (2) the availability of new evidence; (3) the announcement of a supervening new law; (4) the need to issue an order clarifying or correcting an earlier, ambiguous ruling; or (5) the presence of a prior ruling that was unambiguous but might lead to an unjust result. *Baran*, 401 F. Supp. 3d at 481–82 (listing the extraordinary circumstances/exceptions to the law of the case doctrine that permit revisiting a prior decision).[5] Therefore, the Court declines to revisit its initial decision that Mr. Pirl exhausted

---

relief," because the prison failed to respond to Mr. Pirl's grievance within the timeframe for doing so, rendering "administrative remedies … unavailable to [Mr. Pirl] … at the time he brought this action." (*Id.* at 16–17). Therefore, even if Exhibit F contained new evidence regarding the ongoing nature of the investigation into Mr. Pirl's grievance, the Court sees no reason why that evidence would impact the Court's finding that the prison's failure to respond to the grievance within the timeframe for doing so rendering administrative remedies unavailable to Mr. Pirl. Critically, Mr. Ringling offers no argument on this score. (ECF Nos. 162, 178). Accordingly, the Court finds that Mr. Ringling has referenced no new evidence that would cause the Court to reconsider its earlier decision regarding exhaustion of administrative remedies.

[5] Of course, the Court may also reconsider an earlier decision if that decision was "clearly erroneous and would make a manifest injustice[,]" or if that earlier decision, although unambiguous, "might lead to an unjust result." *Baran*, 401 F. Supp. 3d at 481–82. For two reasons, working together, the Court finds that the

his administrative remedies before filing his Complaint in this matter. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 438–443 (vacating a district judge's order vacating an earlier order where the district judge "did not rely on any of the recognized exceptions to the law of the case doctrine" and failed to "find any extraordinary circumstance that would have justified" vacating the earlier order).

The Court also reiterates that Mr. Ringling did not object to the Report and Recommendation within the extended timeframe for doing so, a fact that bolsters the Court's conclusion that it is inappropriate to revisit its initial decision regarding exhaustion. Indeed, as

---

Court's earlier conclusion regarding Mr. Pirl's exhaustion of administrative remedies does not satisfy either criterion.

First, the Court cannot find that the Magistrate Judge's recommendation regarding administrative exhaustion, which this Court adopted upon "reasoned consideration," was clearly erroneous. (ECF No. 64). Indeed, as the Court noted earlier, the Magistrate Judge recommended that the Court reject "Defendants' argument that [Mr. Pirl] failed to include all necessary detail in his grievance pursuant to DC-ADM 804, including his failure to … request monetary relief," because the prison failed to respond to Mr. Pirl's grievance within the timeframe for doing so, rendering "administrative remedies … 'unavailable' to [Mr. Pirl] … at the time he brought this action." (ECF No. 51 at 16–17). In support of this conclusion, the Magistrate Judge cited the Third Circuit's decision in *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). (ECF No. 51 at 16). The Court has reviewed that decision, and although it does not deal with an inmate failing to request monetary relief in a grievance, it does contain the following language: "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365. Further, the Court has reviewed the decisions referenced by Mr. Ringling on this issue, (ECF No. 178 at 3), and although those decisions do find that an inmate who failed to request monetary relief procedurally defaulted his or her claims, *none of those decisions contain a prison that failed to comply with its own grievance deadlines*, making them all readily distinguishable from the present case. Therefore, the Court cannot find that its decision regarding administrative exhaustion was clearly erroneous.

Second, as the Court reiterates below, *see infra* Section III.B.2.b, Mr. Ringling failed to file objections to the Report and Recommendation within the timeframe for doing so, even after the Court extended the deadline for objections. Especially in the absence of a clear error of law, the Court is loath to reverse the jury's verdict on the basis that Mr. Pirl failed to comply with a *procedural requirement*, when doing so would effectively excuse Mr. Ringling's failure to comply with a *procedural requirement*. Moreover, the jury found in Mr. Ringling's favor in this case. (ECF No. 158). Therefore, the Court cannot find that its decision regarding administrative exhaustion led to an unjust result.

the Court noted earlier, the Magistrate Judge issued her Report and Recommendation, resolving the issue of administrative exhaustion, on March 29, 2021. (ECF No. 51). And Mr. Ringling recognized that his objections were due by April 12, 2021. (ECF No. 53). However, even after the Court granted Mr. Ringling an extension of time within which to file his objections, (ECF No. 54), Mr. Ringling did not file any such objections. Accordingly, the Court accepted "in whole the findings and recommendations" of the Magistrate Judge, after reviewing the record and the Report and Recommendation under the applicable "reasoned consideration" standard. (ECF No. 64). The Court finds that it would be especially inappropriate to revisit the issue of exhaustion at this point given the fact that Mr. Ringling failed to object to the Report and Recommendation addressing that issue within the appropriate (and extended) timeframe for doing so. *Cf. EEOC v. City of Long Branch*, 866 F.3d 93, 100 n.3 (3d Cir. 2017) (stating that: (1) when a party fails to timely object to a report and recommendation, the standard of review on appeal is generally for plain error and (2) "'plain error review is so disadvantageous to the losing party that magistrate judges would be well advised to caution litigants that they *must* seek review by the district court by filing [objections] within [14] days of the [Report and Recommendation] with the Clerk of the district court and that failure to do so *will* waive the right to appeal.'") (quoting *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (2011)) (alterations in original).

Accordingly, for all of the foregoing reasons, the Court declines to reconsider its initial decision finding that Mr. Pirl exhausted his administrative remedies before filing his Complaint in this matter. To the extent that Mr. Ringling asks the Court to do so, the Court denies his Motion.

C.      **Mr. Ringling's Second Argument**

In addressing Mr. Ringling's second argument, the Court will: (1) outline that argument, as well as Mr. Pirl's response; (2) overview certain evidence introduced at trial that pertains to this argument; (3) discuss the law in this area; and (4) explain why the Court finds that Mr. Ringling's second argument is unavailing.

### 1. The Parties' Arguments

Mr. Ringling's second argument is that he is entitled to qualified immunity in this case. (ECF No. 178 at 3–4). Mr. Ringling asserts that he is entitled to qualified immunity because he testified that he was joking with Mr. Pirl on July 4, 2019, and there are "no cases in which joking comments have been held to violate the Eighth Amendment." (*Id.*). Further, Mr. Ringling generally argues that he is entitled to judgment as a matter of law because the jury found that he did not cause any physical or identifiable damages to Mr. Pirl. (*Id.* at 4).

In response, Mr. Pirl contends that the record "shows that a reasonable prison official, such as [Mr.] Ringling, would have been aware that calling a prisoner a rat multiple times loud enough for other inmates to hear and then appearing at his cell to affirm his role in facilitating or emboldening [an] attack" could "give rise to liability in violation of [Mr. Pirl's] Eighth Amendment rights." (ECF No. 165 at 5). Mr. Pirl asserts that this evidence meets the two-pronged qualified immunity analysis—namely that (1) Mr. Pirl "has shown [sufficient facts to] make out a violation of his constitutional rights; and (2) [Mr. Pirl's] rights at issue, including his Eighth Amendment right, w[ere] clearly established" at the time of Mr. Ringling's misconduct. (*Id.*).

### 2. Evidence Introduced at Trial Pertaining to This Argument

During trial, Mr. Pirl's July 4, 2019, grievance, which pertains to the events of that date, was admitted into evidence. (ECF No. 156 at 1; P-001). In the absence of a transcript of the trial in

this matter, the Court relays the contents of Mr. Pirl's grievance, as well as the contents of the Initial Review Response to that grievance, as emblematic of the evidence that was introduced at trial regarding Mr. Ringling's words and actions on July 4, 2019.

In his July 4, 2019, grievance, Mr. Ringling stated the following:

> On 7/4/19 when it was time for all inmates to lock in [their cells] for the day. [Approximately] at 8:35 pm in between 8:35 pm to 8:45 pm [Sergeant] Mr. Ringling [and] CO Mr. Gaydos called me from my cell to the front desk on B-block. And when I approach[ed] the desk Sergeant Ringling was behind the desk and CO Gaydos was right next to me with several inmates around because they [were] doing [their] block worker job[s]. Mr. Ringling ask[ed] me what kind of cheese I want. And I ask him what does he mean? He again said what type of cheese you want cause you "Ratted" to get out of the hole. Meaning I snitch[ed] on someone to get out of the hole. Then [he] and the CO Gaydos kept repeating it. I ask[ed] him to stop saying that it's not right cause I ain't no rat. So he then put both of his hands on each side of his mouth to … [and] he said very loud and clear "Attention B block, if anybody wants or needs cheese, go to Pirl's cell, 49, cause he is a rat."

(P-001).

In his Initial Review Response to Mr. Pirl's grievance, Officer Lopresti wrote the following:

> Inmate Pirl … on 7/6/19 at 18[:]30 during our [i]nterview, you stated that SGT Ringling made comments that you were a snitch in front of other inmates that could [have] put your life in danger. On 7/6/19 after [i]nterviewing SGT Ringling, he did admit to making the comments you stated in your grievance, also this LT also watched video of SGT Ringling sitting behind the desk with his hands on both sides of his mouth that you also stated in your grievance. On 7/9/19 officer Gaydos was [i]nterviewed and he confirmed that he was there and heard the comments SGT Ringling made. SGT Ringling and Officer Gaydos were counseled on staff conduct and being professional on the housing units, and this kind of behavior will not be tolerated. After [i]nterviewing staff and watching video, I find that the comments made by staff were wrong and for this, I will uphold your grievance. You seek no further relief.

(ECF No. 156 at 2; D-E at 2).

### 3. Legal Standard

### a.   Qualified Immunity

Under the doctrine of "qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a government official is entitled to qualified immunity, a court must: (1) determine whether the facts produced at trial would permit a reasonable jury to find that the official violated a constitutional right and (2) consider whether the right was clearly established at the time of the relevant conduct. *Rodriguez v. Hayman*, No. 08-CV-4239 (RBK/KMW), 2009 WL 4122251, at *9 (D.N.J. Nov. 23, 2009)

Regarding the second step of the inquiry, since the Supreme Court decided *Farmer v. Brennan*, 511 U.S. 825 (1994) in 1994, "a prison official's duty to protect a prisoner from violence at the hands of other prisoners when the official knows of a heightened risk of harm has been 'well-established.'" *Id.*

### b.   Deliberate Indifference

Because the first step in the qualified immunity analysis requires the Court to determine whether the facts in this case supported the jury's finding that Mr. Ringling violated Mr. Pirl's Eighth Amendment right, the Court turns its attention to the components of an Eighth Amendment deliberate indifference claim.

Those components are as follows: "(1) [the inmate] was incarcerated under conditions posing a substantial risk of serious harm; (2) the official was deliberately indifferent to that

substantial risk to [the inmate's] health and safety; and (3) the official's deliberate indifference caused [the inmate] harm." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (internal quotation marks and citation omitted).

Regarding the first component, a "'pervasive risk of harm may not *ordinarily* be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror.'" *Rodriguez*, 2009 WL 4122251, at *7 (quoting *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985)) (emphasis added). However, district courts in the Third Circuit "have found that the mere act of labeling a prisoner a snitch constitutes a substantial risk of harm." *Williams v. Thomas*, No. 12-CV-01323, 2013 WL 1795578, at *6 (E.D. Pa. Apr. 29, 2013) (collecting cases); *see also Brown v. Shrader*, No. 2:14-CV-1085, 2015 WL 5027510, at *4 (W.D. Pa. Aug. 25, 2015) ("If the Court accepts as true [the inmate's] allegations that [a prison employee] labeled him a snitch, that the label was communicated to other inmates, and that he was aware of the obvious danger associated with a reputation as a snitch, as a reasonable prison official in [the prison employee's] position would have known, then plaintiff has stated a claim of deliberate indifference."); *but see Jackson v. O'Brien*, No. 1:18-CV-032-RAL, 2021 WL 3174687, at *4 (W.D. Pa. July 27, 2021) (finding that a prison guard publicly complaining that an inmate snitched *on him or other corrections officers* does not, without more, create a substantial risk of serious harm to the inmate).

Regarding the second component, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety and disregarded that risk." *Shorter*, 12 F.4th at 375 (internal quotation marks and citations omitted). Further, whether a prison official "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration

in the usual ways, including inference from circumstantial evidence, and *a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.*" *Id.* (emphasis added) (internal quotation marks and citation omitted).

Finally, regarding the third component, the "Supreme Court has explained that compensatory damages for claims brought under § 1983 for violations of constitutional rights 'may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation[,] … personal humiliation, and mental anguish and suffering.'" *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). Further, although a prisoner subject to the PLRA must prove physical injury in order to recover compensatory damages, the Supreme Court has recognized that "certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensable damages." *Id.* at 250–51. And punitive damages may likewise "be awarded based solely on a constitutional violation, provided the proper showing is made." *Id.* at 251.

   **4.**  **Mr. Ringling has Failed to Show That He is Entitled to Qualified Immunity, and the Court Finds That It Was Appropriate for the Jury to Award Mr. Pirl Nominal and Punitive Damages**

Here, in light of the evidence outlined above, *see supra* Section III.C.2, and the evidence produced at trial, the Court finds that the jury had a sufficient evidentiary basis upon which to find the following: (1) Mr. Ringling repeatedly referred to Mr. Pirl as a "rat" and/or "snitch" in the presence of other inmates; (2) Mr. Ringling stated that Mr. Pirl "ratted" or "snitched" to get out of the restricted housing unit within SCI Somerset; (3) Mr. Ringling inferred that Mr. Pirl "ratted" or "snitched" on other inmates, indicating that they should pay Mr. Pirl a visit for his

actions; and (4) Mr. Ringling was aware of the risk to Mr. Pirl from labeling him a "rat" and/or "snitch" to other inmates. The Court holds that these findings are sufficient to support the jury's conclusion that Mr. Ringling violated Mr. Pirl's rights under the Eighth Amendment of the United States Constitution. *See Brown*, 2015 WL 5027510, at *4 (finding that an inmate had stated a claim for deliberate indifference based on similar facts).

The Court further finds that, because the jury had a sufficient evidentiary basis upon which to find that Mr. Ringling was deliberately indifferent to Mr. Pirl's Eighth Amendment right to be protected from violence at the hands of other prisoners, Mr. Ringling's conduct violated a constitutional right that was clearly established in July 2019. *Rodriguez*, 2009 WL 4122251, at *9 ("[S]ince *Farmer* was decided in 1994, a prison official's duty to protect a prisoner from violence at the hands of other prisoners when the official knows of a heightened risk of harm has been 'well-established.'"); *Beers-Capitol*, 256 F.3d at 142 n.15 (holding that because "deliberate indifference under *Farmer* requires actual knowledge or awareness on the part of the defendant, a defendant cannot have qualified immunity if [he] was deliberately indifferent; a reasonable [prison official] could not believe that [his] actions comported with clearly established law while also believing that there is an excessive risk to the plaintiff[] and failing to adequately respond to that risk."). Therefore, the Court holds that Mr. Ringling is not entitled to assert qualified immunity in this case.

The Court also finds that Mr. Ringling's two arguments to the contrary do not alter the Court's holding.

First, regarding Mr. Ringling's assertion that he was only joking with Mr. Pirl on July 4, 2019, it is far from clear that the jury was required to believe Mr. Ringling's testimony on this

issue given that Mr. Ringling was clearly an interested witness. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (stating that when a court resolves a Rule 50 motion, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe …. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterest witnesses") (internal quotation marks and citations omitted). Therefore, it may well be that the jury disregarded this testimony and had very appropriate grounds for doing so. Further, even if the jury believed Mr. Ringling when he testified that he was joking with Mr. Pirl, Mr. Ringling has not asserted that he conveyed the joking nature of his comments to Mr. Pirl and the inmates around Mr. Pirl. (ECF No. 178 at 3–4). Given the inherent danger associated with calling an inmate a "snitch" or a "rat" in a prison setting, the Court finds that even if Mr. Ringling inwardly intended his comments to Mr. Pirl as a joke, that concealed motive has no bearing on the Eighth Amendment inquiry if it was not conveyed to the prisoners who might have been incentivized to harm Mr. Pirl because of Mr. Ringling's comments.

Second, with respect to Mr. Ringling's argument that the "jury found that [Mr.] Ringling did not cause any physical or identifiable damages to [Mr. Pirl,]" and that Mr. Ringling is therefore "entitled to judgment as a matter of law[,]" (*id.* at 4), the Court reiterates that when a defendant violates "certain absolute constitutional rights[,]" that violation may be vindicated by both nominal and punitive damages, even absent "any showing of injury warranting compensable damages." *Allah*, 226 F.3d at 251. Further, the Court finds that the jury's award of punitive damages was appropriate given Mr. Ringling's reckless indifference toward Mr. Pirl's

Eighth Amendment rights. Mr. Ringling manifested that reckless indifference when he: (1) abused his position as a prison guard by labeling Mr. Pirl a "rat" and/or a "snitch" in front of other inmates, indicating that Mr. Pirl informed on them in order to obtain early release from the restricted housing unit, and (2) thereby placed Mr. Pirl in serious risk of harm from those inmates. *See Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir. 1996) ("Punitive damages may be awarded under 42 U.S.C. § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.") (internal quotation marks and citation omitted); *Rodriguez*, 2009 WL 4122251, at *7–10 (holding that a jury could award punitive damages if it found that a prison official knew an inmate had been labeled a "snitch" and failed to take appropriate steps to protect that inmate).

Therefore, the Court finds that: (1) Mr. Ringling is not entitled to assert qualified immunity in this case and (2) it was appropriate for the jury to award Mr. Pirl both nominal and punitive damages given the nature and character of Mr. Ringling's words and actions.

Accordingly, the Court will deny Mr. Ringling's Motion to the extent he seeks Judgment as a Matter of Law.

### D.    Mr. Ringling's Third Argument

#### 1.    The Parties' Arguments

Mr. Ringling's third and final argument is that the evidence at trial does not support an award of punitive damages. (ECF No. 178 at 4–5). Specifically, he asserts that there was "no evidence presented at trial whatsoever that [Mr.] Ringling acted wantonly or maliciously or had

any ill will or spite toward" Mr. Pirl. (*Id.* at 4).[6] Further, Mr. Ringling contends that in light of guidance from the Supreme Court, this Court should reduce the punitive damages award to zero. (*Id.* at 5).

In response, Mr. Pirl argues that the "punitive damages award is supported by evidence and is not excessive." (ECF No. 165 at 6). Further, Mr. Pirl contends that the Supreme Court's guidance on this issue supports affirming the $25,000.00 punitive damages award in this case. (*Id.* at 6–8).

### 2. Legal Standard

The Supreme Court has outlined three guideposts for courts to consider when reviewing a punitive damages award: "[1] the degree of reprehensibility of the [defendant's misconduct]; [2] the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award; and [3] the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996).

Further, the "most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (internal quotation marks and citation omitted). In order to determine reprehensibility, courts should consider whether:

> [T]he harm caused was physical as opposed to economic; the tortious conduct evidenced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

---

[6] With respect to this argument, the Court reiterates its earlier finding that it was appropriate for the jury to award punitive damages in this case. *See supra* Section III.C.4.

*Id.* Such "analysis must be considered on a case-by-case basis. 'The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.'" *Jacobs v. Penn. Dep't of Corr.*, No. 04-CV-1366, 2011 WL 2295095, at *28 (W.D. Pa. June 7, 2011) (quoting *Campbell*, 538 U.S. at 419). Finally, punitive "'damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.'" *Id.* (quoting *Campbell*, 538 U.S. at 419).

3. **The Court Declines to Reduce the Award of Punitive Damages to $0, But the Court Will Reduce the Award of Punitive Damages to $10,000.00 as a Matter of Law**

Here, with respect to reprehensibility, the jury found that Mr. Pirl failed to show that Mr. Ringling's conduct caused him physical harm/damages. (ECF No. 158 at 3, 7). Further, it may well be the case that Mr. Ringling's comments were generally isolated. Nonetheless, Mr. Ringling, who was in a position of power over Mr. Pirl when he made his comments on July 4, 2019, unequivocally evidenced a reckless disregard to Mr. Pirl's physical health and safety by making those comments. Mr. Ringling also directed his comments at Mr. Pirl, who, given his status as an inmate, may fairly be inferred to have financial vulnerability. Therefore, while certain of the reprehensibility factors lead the Court to reduce the jury's award of punitive damages, the Court declines to reduce the punitive damages award to zero, or anywhere near that amount. Indeed, the Court is still inclined to grant a fairly substantial punitive damages award in order to punish Mr. Ringling for subjecting Mr. Pirl to a serious risk of harm and deter other prison guards from making similar comments in the future.

-24-

Turning to the disparity between the harm that Mr. Pirl suffered and the punitive damages award, this Court concurs with the holding of another Court in this district that "an individual punitive damages award of either $5,000.00 or $10,000.00 in contrast to a $1.00 nominal award on a single claim is not excessive." *Jacobs*, 2011 WL 2295095, at *29 (citing *Williams v. Kaufman Cty.*, 352 F.3d 994, 1014–16 (5th Cir. 2003)) (concluding that $15,000.00 in punitive damages per plaintiff on nominal damages of $100.00 per plaintiff was not unreasonable in light of the violations that took place; "any punitive damages-to-*compensatory* damages 'ratio analysis' cannot be applied effectively in cases where only *nominal* damages have been awarded.") (emphasis in original). Indeed, the Fifth Circuit Court of Appeals has noted that "'[b]ecause actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all.'" *Id.* (quoting *Williams*, 352 F.3d at 1016) (citing *Provost v. City of Newburgh*, 262 F.3d 146, 164 (2d Cir. 2001)) (concluding that, based on the particular facts and circumstances of the case and the criteria set forth in *Gore*, $10,000.00 in punitive damages when only nominal damages were awarded 'approaches the limits of what we would deem consistent with constitutional constraints.'"); *McKinley v. Trattles*, 723 F.2d 1320, 1327–28 (7th Cir. 1984) (reducing a jury-decided punitive damages award of $15,000.00 to a "guideline limitation of $6,000.00"). Therefore, upon consideration of *Gore's* first two guideposts, the Court is strongly inclined to reduce the punitive damages award in this case to $10,000.00.

Turning to the third factor, the Court notes that Mr. Ringling argues "that there are no comparable cases in which punitive damages have been awarded." (ECF No. 178 at 5). However,

he does not cite to *any* similar cases as the one now before this Court, leaving the Court with little guidance relative to this factor.

For his part, Mr. Pirl cites a case in which a court affirmed an award of $1.00 in nominal damages and $10,000.00 in punitive damages to an inmate and against a prison official where the jury found that that prison official retaliated against the inmate. (ECF No. 165 at 8); *Tate v. Dragovich*, No. 96-CV-4495, 2003 WL 21978141 (E.D. Pa. Aug. 14, 2003).[7] Therefore, the Court finds that the third factor supports the Court's conclusion that it is appropriate to reduce the punitive damages award in this case from $25,000.00 to $10,000.00.

In sum, the Court denies Mr. Ringling's "Motion for Judgment as a Matter of Law or Remittitur to Reduce Punitive Damages" (ECF No. 162) insofar as Mr. Ringling requests judgment as a matter of law and grants that Motion insofar as Mr. Ringling seeks a reduction in the jury's award of punitive damages. The Court finds that the appropriate award of damages in this case is $1.00 in nominal damages and $10,000.00 in punitive damages.[8]

---

[7] The other cases to which Mr. Pirl cites are not as helpful to the Court, and none would lead the Court to award Mr. Pirl more than $10,000.00 in punitive damages in this case. (ECF No. 165 at 8); *Siggers-El v. Barlow*, 433 F. Supp. 2d 811 (E.D. Mich. 2006) (denying a motion for a remittitur where the jury awarded the Plaintiff $4,000.00 in economic damages, $15,000.00 in mental or emotional damages, and $200,000.00 in punitive damages); *Bert Co. v. Turk*, 257 A.3d 93, 118–132 (Pa. Super. Ct. 2021) (affirming a punitive damages award that was 11.2 times the aggregate, compensatory damages that the jury awarded and finding that the punitive damages award was "*light years away* from the outer limits of the Due Process Clause") (emphasis in original); *Cooper Indus., Inc. v. Leatherman Tool Grp. Inc.*, 532 U.S. 424, 429 (2001) (noting that the district court affirmed a jury verdict of $50,000.00 in compensatory damages and $4.5 million in punitive damages).

[8] In closing, the Court notes that "a court must afford a plaintiff the option of a new trial when it attempts to reduce a jury award because it believes the amount of the verdict is not supported by the evidence. These reductions are frequently called remittiturs." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 716 (3d Cir. 2010). However, the "same is not true when a court must reduce a damages award to avoid a denial of due process. In that case, the award is reduced as a matter of law and there is no interference with the Seventh Amendment right to have a jury make findings of act." *Id.* Here, in light of the foregoing, the Court finds that $10,000.00 in punitive damages is at the outer limit of what it could award and still be in compliance

IV.    Mr. Pirl's "Petition for Attorneys' Fees and Expenses" (ECF No. 160)

The Court now turns to Mr. Pirl's "Petition for Attorneys' Fees and Expenses[.]" (ECF No. 160). There are three primary arguments that the Court must address in order to resolve Mr. Pirl's Motion. Upon addressing those arguments, the Court finds that it is appropriate to award Mr. Pirl $15,001.50 in attorneys' fees and $1,367.58 in costs.

A.    The Parties' Arguments

In his Brief in support of his Motion, Mr. Pirl argues that he should be awarded attorneys' fees in the amount of $135,527.05. (ECF No. 161 at 2–16). Mr. Pirl also seeks expenses in the amount of $22,914.99. (*Id.* at 16–17).

In Mr. Ringling's Response in Opposition, he advances three general arguments. (ECF No. 169). First, he asserts that the PLRA "limits the recoupment of attorney's fees to 150 percent of the prevailing claim[.]" (*Id.* at 4). Indeed, Mr. Ringling contends that it is only Mr. Pirl's Eighth Amendment claim for which he can receive attorneys' fees, since attorneys' fees are not available under 42 U.S.C. Section 1988 for Negligence claims. (*Id.* at 3). Therefore, given the Court's reduction of the jury's award of punitive damages, Mr. Ringling effectively argues that Mr. Pirl can only recover $7,501.50 in attorneys' fees in this case (150 percent of the $5,001.00 judgment for Mr. Pirl's Eighth Amendment claim). (*Id.* at 4). Second, Mr. Ringling asserts that under the PLRA, twenty-five percent of the judgment in this case must go toward the award of attorneys' fees. (*Id.*). Third, Mr. Ringling argues that Mr. Pirl should not receive compensation for certain expenses he contends he incurred in litigating this case. (*Id.* at 4–5).

---

with constitutional due process. *Provost*, 262 F.3d at 164; *Jacobs*, 2011 WL 2295095, at *27–29. Therefore, the Court need not permit Mr. Pirl the option of a new trial, and moving forward, the Court will refer to its action as a reduction in the verdict as a matter of law. *Cortez*, 617 F.3d at 716.

In Mr. Pirl's Reply, he advances four broad arguments. (ECF No. 173). First, he asserts that Mr. Ringling waived his argument that the PLRA caps attorneys' fees in this case because Mr. Ringling did not raise that argument as an "affirmative defense in [his] Answer to [Mr. Pirl's] Amended Complaint." (*Id.* at 3). Relatedly, Mr. Pirl contends that the plain language of the PLRA "does not impose a blanket cap on attorney's fees at 150% of a monetary judgment." (*Id.* at 4). Therefore, Mr. Pirl again requests attorneys' fees in the amount of $135,527.05. (*Id.* at 2). Second, Mr. Pirl argues that the Court has discretion in whether to apply twenty-five percent of the judgment to the award of attorneys' fees, and the Court should exercise its discretion so as to apply zero percent of the judgment to the award of attorneys' fees. (*Id.* at 8–9). Third, with respect to Mr. Ringling's argument that Mr. Pirl can only recover attorneys' fees for half of the judgment (*i.e.*, the portion attributable to Mr. Pirl's Eighth Amendment claim), Mr. Pirl argues that Mr. Ringling "does not cite to any statutes or common law requiring this Court to split the jury award of punitive damages in half to complete the calculation of attorney fee[s] and costs." (*Id.* at 9). Fourth, Mr. Pirl contends that he is entitled to recover all costs and expenses listed in his initial Petition. (*Id.* at 10–13).

In his Sur-Reply, Mr. Ringling argues that the PLRA's cap on attorneys' fees is not an "affirmative defense that must be raised in an answer[,]" but is rather a "statutory requirement that applies to all cases" brought "'by a prisoner confined in any jail, prison, or other correctional facility.'" (ECF No. 177 at 2) (citing 42 U.S.C. § 1997e(d)). Further, Mr. Ringling asserts that Third Circuit precedent bars this Court from applying zero percent of the judgment toward an award of attorneys' fees. (*Id.*).

Finally, in Mr. Pirl's Reply to Mr. Ringling's Sur-Reply, Mr. Pirl again contends that Mr. Ringling waived his argument that the PLRA caps an award of attorneys' fees in this case. (ECF No. 181 at 1–2).

In light of the foregoing, there are three issues before the Court relative to Mr. Pirl's Motion: (1) whether to award attorneys' fees to Mr. Pirl, and if so, how much; (2) whether to apply a portion of the judgment to any award of attorneys' fees, and if so, how much; and (3) whether to award costs and expenses to Mr. Pirl, and if so, how much. The Court now addresses those three issues in turn.

**B.      The Court Awards Mr. Pirl $15,001.50 in Attorneys' Fees**

### 1.   Mr. Pirl is Eligible to Receive Attorneys' Fees in This Case, But the PLRA Caps the Award of Attorneys' Fees at 150 Percent of the Judgment

At the outset, the Court notes that, based on the jury's verdict, Mr. Pirl is a prevailing party in this case. *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (explaining that, under Supreme Court precedent, a plaintiff may be considered a prevailing party if he succeeds on "any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (internal quotation mark and citation omitted). Therefore, Mr. Pirl is eligible to receive attorneys' fees under 42 U.S.C. Section 1988.[9]

Turning to the PLRA, that statute provides the following limitation on an award of attorneys' fees:

> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied

---

[9] In a civil rights action filed pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Indeed, "a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001).

to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

42 U.S.C. § 1997e(d)(2).[10]

The Third Circuit has held that "[s]ubsection (d)(2) of the PLRA limits a prevailing prisoner-plaintiff's attorney's fee award to 150 percent of the judgment[.]" *Parker v. Conway*, 581 F.3d 198, 201 (3d Cir. 2009); *Harris v. Rici*, 595 F. App'x 128, 134 (3d Cir. 2014) ("Subsection 1997e(d)(2) of the PLRA has been consistently interpreted by our Court and others to cap

---

[10] In full, the PLRA provides the following regarding attorneys' fees:

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

(4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title.

42 U.S.C. § 1997e(d).

attorney's fee awards in prisoner litigation to 150 percent of the judgment[.]"). Further, the Third Circuit has found that the PLRA's cap on attorneys' fees applies with equal force when a jury awards a prisoner-plaintiff nominal damages alone. *Harris*, 595 F. App'x at 133–35.

As the Court indicated at summary judgment, Mr. Pirl was confined in a correctional institution at the time he brought this action, meaning that this case is subject to the PLRA's requirements. (ECF Nos. 51, 64). Therefore, consistent with the text of subsection (d)(2) of the PLRA and the Third Circuit's interpretation of that subsection in *Parker*, this Court finds that it is bound to cap the award of attorneys' fees in this case to no more than 150 percent of the judgment.[11] In this case, 150 percent of the judgment is equal to $15,001.50. *See supra* Section III.D.3.

The Court having found that: (1) it can award Mr. Pirl attorneys' fees in this case and (2) the PLRA's cap on attorneys' fees applies to that award, the Court now turns its attention to the appropriate amount of attorneys' fees to award to Mr. Pirl.

**2.   The Court Awards Mr. Pirl $15,001.50 in Attorneys' Fees**

At the outset, the Court notes that Mr. Pirl states that one of his attorneys, George M. Kontos, performed 227.2 hours of pre-judgment work in this case. (ECF No. 160-10 at 1). Attorney Kontos seeks compensation for that work in an amount of $450.00 per hour (prior to the 22 percent lodestar reduction that he suggests). (*Id.*). Further, Attorney James P. Lopez performed 256.3

---

[11] The Court stresses that contrary to Mr. Pirl's argument, the PLRA's cap on attorneys' fees is not an affirmative defense, but rather a statutory requirement that limits this Court's authority to award attorneys' fees. This statutory cap applies in this case regardless of whether Mr. Ringling raised the issue in his Answer. 42 U.S.C. § 1997e(d).

hours of pre-judgment work on this case, and he seeks compensation for that work in an amount of $225.00 per hour (prior to the 22 percent lodestar reduction that he suggests). (*Id.*).[12]

However, the PLRA provides that, in a case falling within its ambit, "[n]o award of attorney's fees … shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). The hourly rate that Attorneys Kontos and Lopez can obtain is therefore capped at $237.00 for most of the work that they performed.[13] *Hernandez v. Kalinowski*, 146 F.3d 196, 201 (3d Cir. 1998) (applying the rates established in 18 U.S.C. § 3006A for Criminal Justice Act ("CJA") court-appointed attorneys when determining awards of attorneys' fees under the PLRA); *Criminal Justice Act*, UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA, https://www.pawd.uscourts.gov/criminal-justice-act-info (last visited Mar. 3, 2023) (referring the reader to "§ 230.16(A) Non-Capitol Hourly Rates" on the United States Courts' website, which sets the non-capitol maximum hourly rate for 2022 at $158 per hour). Accordingly, by way of example, the most that Attorney Kontos could ever obtain in pre-judgment fees in this case is approximately $53,846.40 (227.2 hours times $237.00 per hour).

But, once again, the PLRA steps in to limit the total award to Mr. Pirl to no more than $15,001.50. *See Parker*, 581 F.3d at 201. The PLRA also places two additional restrictions on awards

---

[12] Applying the twenty-two percent reduction to the lodestar that Mr. Pirl suggests, Attorney Kontos seeks $79,747.20 for the pre-judgment work that he performed, and Attorney Lopez seeks $44,980.65 for the pre-judgment work that he performed. (ECF No. 160-10 at 1).

[13] The Court notes that both attorneys performed a comparatively small amount of work in 2021, at which time the relevant rate was slightly lower. (*See* ECF No. 160-10); *Criminal Justice Act*, UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA, https://www.pawd.uscourts.gov/criminal-justice-act-info (last visited Mar. 3, 2023) (referring the reader to "§ 230.16(A) Non-Capitol Hourly Rates" on the United States Courts' website, which sets the non-capitol maximum hourly rate for 2021 at $155 per hour).

of attorneys' fees that are relevant in this case, namely that any award of fees must be (1) "directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title;" and (2) the amount of the fee award must be "proportionally related to the court ordered relief for the violation." 42 U.S.C. § 1997e(d)(1).

The Court has reviewed Mr. Pirl's submissions to the Court regarding the time that his attorneys spent on his case, (ECF Nos. 160-2–160-10), and the Court easily finds that Mr. Pirl's attorneys directly and reasonably incurred $15,001.50 worth of fees "in proving an actual violation of the plaintiff's rights protected by" the Eighth Amendment/Section 1983, as the nature of this case and the foregoing discussion regarding Attorney Kontos and Attorney Lopez's work makes clear. 42 U.S.C. § 1997e(d)(1). Further, the Court finds that an award of $15,001.50 in attorneys' fees is "proportionally related to the court ordered relief for the violation" of Mr. Pirl's Eighth Amendment right. *Id.* In making these findings, the Court notes that Mr. Ringling has offered no objection to any of Mr. Pirl's "itemized fee entries" at this time. (ECF Nos. 169, 177). Therefore, the Court awards Mr. Pirl $15,001.50 in attorneys' fees.[14]

---

[14] The Court also briefly addresses Mr. Ringling's assertion that: (1) the Court entered judgment in this case in the amount of $25,000.00 in total punitive damages for Mr. Pirl's Eighth Amendment claim and Negligence claim and (2) since Negligence is not listed in 42 U.S.C. § 1988, Mr. Pirl's "award for attorney fees must be based on the amount of his award attributable to his Eighth Amendment claim." (ECF No. 169 at 3). In light of the Court reducing the punitive damages award to $10,000.00 in this case, Mr. Ringling would now argue that Mr. Pirl can recover no more than $7,501.50 in attorneys' fees (150 percent of the portion of the judgment attributable to Mr. Pirl's success on his Eighth Amendment claim). (*Id.* at 4).

The Court finds this argument unavailing for three reasons.

First, Mr. Ringling cites no legal authority in support of his argument. (ECF Nos. 169, 177).

Second, there is caselaw supporting the principle that when a plaintiff prevails on both a claim(s) for which he can recover attorneys' fees under Section 1988 and a claim(s) for which he cannot recover attorneys' fees

### C.   Mr. Pirl Must Apply $2,500.25 of the Judgment to Satisfy the Award of Attorneys' Fees

The Court must now determine how much of the judgment Mr. Pirl must apply to the award of attorneys' fees.

The Supreme Court has recently settled this issue. In *Murphy v. Smith*, the Supreme Court held that in "cases governed by § 1997e(d), … district courts must apply as much of the judgment as necessary, up to 25%, to satisfy an award of attorney's fees." 138 S. Ct. 784, 790 (2018); *see also Mackey v. Watson*, No. 17-CV-01341-CMA-STV, 2020 WL 4734339, at *7 (D. Colo. Aug. 14, 2020) ("The PLRA … requires that 25% of the judgment obtained by Plaintiff be allocated toward the

---

under Section 1988, that plaintiff can recover fees "under § 1988 on pendent state law claims so long as they arose from a common nucleus of operative fact with federal claims." *Penn. Gen. Energy Co., LLC v. Grant Twp.*, No. 1:14-CV-209, 2019 WL 1436937, at *2 n.7 (W.D. Pa. Mar. 31, 2019); *Murphy v. Smith*, 864 F.3d 583, 587–88 (7th Cir. 2017) ("[I]f a plaintiff succeeds … or, more precisely, does not lose … on a federal claim for which federal law authorizes fees, he can also recover fees for work done on related state-law claims.") (internal quotation marks and citations omitted). To the extent that this caselaw is applicable in a case where the PLRA applies (which is unclear), it would support the conclusion that Mr. Pirl can recover attorneys' fees for the entirety of the judgment, given the fact that his Eighth Amendment and Negligence claims were very closely related.

Third, the plain language of the PLRA cuts against Mr. Ringling's argument. For starters, the 150 percent cap provides the following: "If the award of attorney's fees is not greater than 150 percent *of the judgment*, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2) (emphasis added). Especially when read in light of the caselaw above, this statement very much supports the idea that when a plaintiff wins a judgment for interrelated claims, he can obtain an attorneys' fee award in an amount not to exceed 150 percent of that judgment, even if part of the judgment was for a federal claim and part was for a pendent state law claim. Further, the PLRA does provide that fees may be awarded to the extent that they were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988[.]" *Id.* § 1997e(d)(1)(A). However, even assuming without deciding that this subsection stands for the principle that a plaintiff cannot recover any fees for work performed on pendent state law claims, based on the hundreds of hours that Mr. Pirl's attorneys spent working on this case, the Court easily finds that his attorneys spent $15,001.50 worth of time *vindicating Mr. Pirl's Eighth Amendment right alone.* Therefore, when the Court considers that finding and applies it in the context of the PLRA's 150 percent cap, which once again references the judgment (not any single claim), the Court would still be left in a position to award Mr. Pirl $15,001.50 in attorneys' fees.

fee award.") (citing *Murphy*, 138 S. Ct. at 790). Therefore, the Court holds that Mr. Pirl must contribute 25% of his judgment—$2,500.25—to satisfy the fee award.

### D.      The Court Awards Mr. Pirl $1,367.58 in Costs

The Court now turns its attention to the final issue raised by Mr. Pirl's Motion—whether to award Mr. Pirl costs in this case, and if so, how much.

#### 1.   Legal Standard

Federal Rule of Civil Procedure 54 provides that "costs … should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "Under the rule, the district court is authorized to reimburse only for those costs enumerated in 28 U.S.C. § 1920." *Romero v. CSX Transp., Inc.*, 270 F.R.D. 199, 201 (D.N.J. 2010) (citing *Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010)). Section 1920 permits for taxation of the following costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under Section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The "Third Circuit has held that 'there is a strong presumption that costs are to be awarded to the prevailing party.'" *Romero*, 270 F.R.D. at 202 (quoting *Reger*, 599 F.3d at 288)

(internal quotation marks and citation omitted). Where the "prevailing party demonstrates that a cost is taxable under section 1920, the Court should generally grant the application unless the losing party introduces evidence showing why the cost should be reduced or denied." *Id.* Moreover, "while the district court need not write an opinion explaining the basis for allowing the taxation of costs, it must articulate its reasons for denying or reducing costs to the prevailing party." *Id.* But even given this presumption in favor of the prevailing party, "the Third Circuit has observed that because a district court's discretion to shift costs is constrained by statute, the costs to which a prevailing party is entitled under Federal Rule of Civil Procedure 54 'often fall [well] short of the party's actual litigation expenses.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 458 (3d Cir. 2000)).[15]

> ### 2. Upon Review of Mr. Pirl's Submissions, the Court Awards Him $1,367.58 in Costs

In this case, Mr. Pirl seeks reimbursement for seven categories of expenses: (1) a mediation fee; (2) the fee for Dr. Michael J. White's deposition, his narrative report, his deposition transcript, and the video recording of that deposition; (3) five subpoenas issued to five witnesses; (4) three hotel stays; (5) a fee for PACER expenses; (6) the cost of two transcripts; and (7) monies paid to a technology company (Precise Trial) that assisted Mr. Pirl leading up to and during trial. (ECF No. 160-10 at 64). The Court examines those seven categories in turn.

> #### a. The Court Finds That Section 1920 Does Not Allow Taxation of the Mediation Fee

---

[15] Although the word "well" is omitted from this quote in *Romero*, 270 F.R.D. at 202, the exact language set forth by the Third Circuit in *In re Paoli* is as follows: "[t]his means that while a prevailing party is awarded its costs, those costs often fall well short of the party's actual litigation expenses." 221 F.3d at 458.

The first expense for which Mr. Pirl seeks reimbursement is $1,495.00 for mediation in this case. (*Id.*). However, a "mediation fee falls outside the parameters of 28 U.S.C. § 1920[.]" *Romero*, 270 F.R.D. at 205; *see also Jordan ex rel. Arenas-Jordan v. Russo*, No. 09-CV-88, 2014 WL 869482, at *19 (W.D. Pa. Mar. 5, 2014) ("Plaintiffs' $700.00 fee for early neutral evaluation is not a taxable cost."). Further, Mr. Pirl has not provided the Court "with a statute or rule authorizing the shifting of this fee as a taxable cost." *Romero*, 270 F.R.D. at 205; (ECF Nos. 160, 161, 173, 181). Therefore, the Court will not permit Mr. Pirl to recover the cost of mediation in this case.

### b. The Court Finds That Section 1920 Permits Mr. Pirl to Tax $325.00 Relative to Dr. White's Expert Testimony

With respect to Dr. White's expert testimony in this case, Mr. Pirl seeks reimbursement for the following four expenses: (1) $3,000.00 for Dr. White's deposition testimony; (2) $750.00 for his narrative report; (3) $594.80 for the cost of obtaining the transcript of his deposition testimony; and (4) $285.00 for the cost of obtaining the video of his deposition testimony. (ECF No. 160-10 at 65, 67–68).[16]

Turning to the $3,750.00 that Mr. Pirl paid Dr. White for his deposition testimony and narrative report, the Supreme Court has "ruled that costs for expert witnesses other than those court-appointed experts referenced in 28 U.S.C. § 1920(6) are taxable only to the same extent as any other fact witness." *Garonzik v. Whitman Diner*, 910 F. Supp. 167, 169–70 (D.N.J. 1995) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987)) ("[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of

---

[16] The Court notes that Mr. Ringling objects to Mr. Pirl taxing him for the costs of: (1) Dr. White's deposition, (2) the transcript of the deposition, and (3) the videotape of the deposition. (ECF No. 169 at 5).

[28 U.S.C. § 1821], absent contract or explicit statutory authority to the contrary."). Pursuant to 28 U.S.C. Section 1821(b), a witness who attends a deposition shall be paid a fee of $40.00 per day. 28 U.S.C. § 1821(b). Therefore, because Dr. White's deposition was one hour long, (ECF No. 173 at 11), the Court permits Mr. Pirl to tax $40.00 for that deposition. However, because Mr. Pirl has not alleged that he is entitled to any other compensation for Dr. White's deposition pursuant to Section 1821 (such as the cost of Dr. White's travel, etc.), and because Mr. Pirl has pointed the Court to no provision of law allowing for the reimbursement of the expense for Dr. White's narrative report, the Court declines to permit Mr. Pirl to tax any more than $40.00 of the expenses for Dr. White's deposition and narrative report. (ECF Nos. 160, 161, 173, 181); *Garonzik*, 910 F. Supp. at 170 ("Under [Supreme Court precedent], this court has no discretion to depart from the statutory witness fee in 28 U.S.C. § 1821 for [the expert's] attendance at his deposition. Accordingly, the plaintiffs' proposed cost of $2,000.00 shall be disallowed to the extent it exceeds $40.00.").

Turning to the transcript of Dr. White's deposition, deposition "transcripts which merely provide useful background information, but are not necessary for use in the prosecution of Plaintiff's claims, are not within the list of items which may be taxed as costs under 28 U.S.C. § 1920." *Romero*, 270 F.R.D. at 202. In this case, the transcript of Dr. White's deposition was not admitted into evidence during trial, (ECF No. 156), and Mr. Pirl has not explained why it was necessary for the prosecution of his claims. (ECF Nos. 160, 161, 173, 181). Accordingly, the Court will not permit Mr. Pirl to tax this cost to Mr. Ringling. *Rormero*, 270 F.R.D. at 202–03 (declining to permit the plaintiff to tax the costs of deposition transcripts where the plaintiff failed to show that the transcripts were necessary for use in the case).

Finally, turning to the video of Dr. White's deposition, this Court agrees with the District of New Jersey that "expenses associated with videotape depositions are taxable to prevailing parties under Fed. R. Civ. P. 54(d)." *Garonzik*, 910 F. Supp. at 170–71 (allowing expenses for the preparation and playback of the videotape deposition because those expenses were "reasonably necessary to the litigation"). Unlike the transcript of Dr. White's deposition, the videotape of his deposition was played at trial in this case. (ECF No. 156 at 1). The Court therefore finds that the videotape deposition was reasonably necessary to this litigation. Accordingly, the Court will permit Mr. Pirl to tax the $285.00 cost for the videotape of Dr. White's deposition.[17]

All told, with respect to Dr. White's expert testimony, Mr. Pirl may tax $325.00 to Mr. Ringling.

### c.   The Court Finds That Section 1920 Permits Mr. Pirl to Tax $300.00 Relative to the Five Subpoenas

Turning to the $500.00 that Mr. Pirl spent on subpoenas for witnesses ($100.00 per witness), (ECF No. 160-10 at 64), Mr. Ringling offers no objection to Mr. Pirl taxing the $300.00 that he spent subpoenaing three witnesses who did in fact testify at trial. (ECF Nos. 169, 177). The Court therefore permits Mr. Pirl to tax Mr. Ringling the $300.00 for those three subpoenas under Section 1920.[18]

---

[17] In light of the fact that the Court is permitting Mr. Pirl to tax the cost of the videotape of the deposition, it is all the more inappropriate to permit him to tax the cost of the transcript of the deposition, which he has failed to show was necessarily obtained for use in the case. *Warner Chilcott Laboratories Ireland Ltd. v. Impax Laboratories, Inc.*, No. 08-CV-6304 (WJM), 2013 WL 1876441, at *5 (D.N.J. Apr. 18, 2013) ("[T]he Clerk generally does not allow recovery of the costs of *both* the printed transcripts and the videotapes in the absence of a showing that both were necessarily obtained for use in the case.").

[18] The courts "are divided over whether private process server fees are allowable under 28 U.S.C. § 1920." *Montgomery Cty. v. Microvote Corp.*, No. 97-CV-6331, 2004 WL 1087196, at *3 n.7 (E.D. Pa. May 13, 2004) (internal quotation marks and citation omitted); *Advanced Fluid Sys., Inc. v. Huber*, No. 1:13-CV-3087, at *4–

However, Mr. Ringling does object to Mr. Pirl taxing costs for the two witnesses he subpoenaed who did not testify at trial. (ECF No. 169 at 5). In response, Mr. Pirl states that he believes that "recovery of the [$100.00] fee for each subpoena is recoverable as a reasonable fee incurred in preparing for [his] case-in-chief." (ECF No. 173 at 12).[19]

On the one hand, courts in the District of New Jersey hold that when a person "was served with a subpoena, but did not testify at trial, the cost is not necessary and the party will not be reimbursed." *Roccisiano v. Twp. of Franklin*, No. 11-CV-6558 (FLW)(LHG), 2015 WL 3649149, at *20 (D.N.J. June 11, 2015). On the other hand, there is precedent suggesting that "the appropriate inquiry is whether the issuance of the subpoena was reasonable and necessary *in light of the facts known at the time of service*." *Montgomery Cty.*, 2004 WL 1087196, at *4 (emphasis added) (internal quantitation marks and citation omitted) (permitting the plaintiff to tax costs for subpoenas where that the plaintiff "explained that it believed that the subpoenaed depositions, testimony and records were necessary in their case-in-chief and critical to defeating the Defendants' Motions for Summary Judgment" in a response specifically addressing and countering the Defendant's arguments).

Here, the Court need not choose between these lines of precedent because under either, the Court would find that Mr. Pirl has failed to meet his burden of establishing that the fees for the two witnesses he did not call at trial fall within the ambit of Section 1920. Indeed, Mr. Pirl's

---

5 (M.D. Pa. Feb. 4, 2021). However, because there is a colorable argument that Section 1920(1) "allows for the taxing of subpoena fees[,]" *Montgomery Cty.*, 2004 WL 1087196, at *3, and because Mr. Ringling does not object to Mr. Pirl taxing the fees for these three subpoenas, the Court will permit Mr. Pirl to tax Mr. Ringling $300 (total) for these three subpoenas.

[19] However, Mr. Pirl offers no caselaw in support of his request to tax the fees for these two subpoenas to Mr. Ringling. (ECF Nos. 160, 161, 173, 181).

statement that the subpoenas to the two witnesses were "reasonable fee[s] incurred in preparing" for his case-in-chief do not permit the Court to make any meaningful assessment regarding the necessity of those subpoenas in this case. (ECF No. 173 at 12). Therefore, the Court will bar Mr. Pirl from taxing the $200 for those subpoenas to Mr. Ringling.

Accordingly, the Court will permit Mr. Pirl to tax Mr. Ringling $300.00 for the subpoenas to the three witnesses who did testify at trial, but the Court will not permit Mr. Pirl to tax Mr. Ringling the $200.00 for the two witnesses who did not testify at trial.

      **d.**    **The Court Finds That Section 1920 Does Not Permit Mr. Pirl to Tax the Cost of the Three Hotel Stays**

Mr. Pirl also seeks reimbursement for the following three hotel stays by his attorneys: (1) $328.97 for a night at Hilton Hotels & Resorts, (2) $868.60 for five nights at a Holiday Inn, and (3) another $868.60 for five nights at a Holiday Inn. (ECF No. 160-10 at 64).

Under Third Circuit precedent, certain travel expenses incurred by attorneys are recoverable as attorneys' fees under Section 1988. *Stadler v. Abrams*, No. 13-CV-2741 (RBK/AMD), 2018 WL 3617967, at *15 (D.N.J. July 30, 2018) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)) (holding that "travel time and expenses of the attorney" are "generally recoverable under section 1988 when it is the custom of attorneys in the local community to bill their clients separately for them"). However, the Court has already awarded Mr. Pirl the maximum amount of attorneys' fees permitted by the PLRA. *See supra* Section IV.B. Therefore, the Court cannot award Mr. Pirl reimbursement for his hotel stays as attorneys' fees. *Thompson v. Smith*, 805 F. App'x 893, 910 n.6 (11th Cir. 2020) ("Here, because travel costs and postage are considered to be

expenses, [plaintiff's] attempt to recover for Federal Express costs and his attorneys' hotel, airline, and parking expenses are limited by the 150% cap as set forth in the PLRA.").

Further, Mr. Pirl has not advanced any argument that his hotel stays fall under the ambit of the costs awardable pursuant to Section 1920, (ECF Nos. 160, 161, 173, 181), and the Court finds that there is no portion of that statute that permits an attorney's hotel stays to be taxed to another party as a cost. 28 U.S.C. § 1920. Therefore, the Court will not permit Mr. Pirl to tax the cost of his attorneys' hotel stays to Mr. Ringling.

   e.   **The Court Finds That Section 1920 Does Not Permit Mr. Pirl to Tax His PACER Fee as a Cost**

Next, Mr. Pirl seeks reimbursement for a PACER fee in the amount of $92.10. (ECF No. 160-10 at 64). Mr. Pirl offers the following description regarding that fee: "Quarterly Invoice/[Statement] of Account[.]" (*Id.*). Further, the payment receipt for this expense indicates the following: "**Fee Type**[:] PACER Case Search[.]" (ECF No. 160-10 at 74) (emphasis in original).

On the one hand, a party may use PACER to copy papers, which could perhaps mean that a PACER charge is a "'[f]ee[] for … copies of papers necessarily obtained for use in the case.'" *In re Olick*, No. 07-BR-10880 (ELF), 2008 WL 3837759, at *9 (Bankr. E.D. Pa. Aug. 12, 2008) (quoting 28 U.S.C. §1920(4)). On the other hand, most "courts hold that PACER charges are not taxable costs." *Id.*

In this case, Mr. Pirl has offered minimal details regarding the PACER charge that he seeks to tax to Mr. Ringling, (ECF Nos. 160, 161, 173, 181), and the Court is therefore unable to determine whether that charge potentially falls within the ambit of Section 1920. Accordingly, the Court will not permit Mr. Pirl to tax this expense to Mr. Ringling. *Stadler*, 2018 WL 3617967, at *15 (declining

to permit the plaintiff to tax medical records as costs because plaintiff's "spreadsheet [was] too vague to determine what provision, if any, of § 1920 these could fall into").

      **f.**      **The Court Finds That Section 1920 Permits Mr. Pirl to Tax $438.65 for the Two Transcripts**

Mr. Pirl also seeks reimbursement for two additional transcripts. (ECF No. 160-10 at 64). Specifically, he seeks $334.65 for a "Pretrial transcript[,]" and $104.00 for "Trial [t]estimony transcripts for [K]evin [T]urner[.]" (*Id.*).

Unlike expenses that the Court has previously disallowed: (1) these expenses could fall very easily within the scope of Section 1920(2), which permits taxation of costs for "printed or electronically recorded transcripts necessarily obtained for use in the case;" and (2) Mr. Ringling has not objected to Mr. Pirl taxing these two items to him as costs. (ECF Nos. 169, 177). Therefore, the Court is satisfied that these transcripts were necessary for Mr. Pirl's use in this litigation, and the Court will permit Mr. Pirl to tax the $438.65 for these two transcripts to Mr. Ringling.

      **g.**      **The Court Finds That Section 1920 Permits Mr. Pirl to Tax $303.93 of the Money He Paid to Precise Trial**

Finally, Mr. Pirl seeks reimbursement for $13,693.27 that he paid to Precise Trial, a company that assisted him with technological aspects of the case leading up to and during trial. (ECF No. 160-10 at 64).[20] In Precise Trial's invoice to Mr. Pirl, they noted charges for fourteen

---

[20] The Court notes that the invoice that Mr. Pirl submitted to the Court from Precise Trial contains charges totaling $12,143.56. (ECF No. 160-10 at 83–84). Mr. Pirl also submitted the "Terms & Conditions" of his agreement with Precise Trial. (*Id.* at 81–82). In that document, Precise Trial states that the Client (in this case, Mr. Pirl) must pay a $2,500 "Retainer Fee[.]" (*Id.* at 81). The document further provides that the "Retainer Fee will account as a credit towards the Client's account for the case to which this Contract applies." (*Id.*). Therefore, it appears to the Court that the $1,549.71 difference between the $13,693.27 that Mr. Pirl states he paid to Precise Trial and the $12,143.56 in charges listed in the invoice that Mr. Pirl submitted to the Court was part of the Retainer Fee that Mr. Pirl paid to Precise Trial. However, Mr. Pirl has not provided any additional documentation to the Court regarding how Precise Trial used this

distinct categories of services: (1) trial consulting, (2) graphic design, (3) out-of-pocket expenses for Precise's technician, (4) travel time for Precise's technician, (5) mileage for Precise's technician, (6) tech time, (7) processing, (8) BW print, (9) tabs, (10) 2" 3-ring binders, (11) client meeting, (12) synchronization, (13) project management, and (14) clip creation. (*Id.* at 83–84.)

In addressing whether Mr. Pirl may tax Mr. Ringling for these fourteen categories, the Court first outlines the law with respect to Section 1920(4).[21]

### i.   Legal Standard: Section 1920(4)

28 U.S.C. Section 1920(4) provides that taxable costs include fees "for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4).

With respect to exemplification, in a well-reasoned opinion considering and applying relevant Third Circuit precedent, the Eastern District of Pennsylvania found that "'exemplification' in 28 U.S.C. 1920(4) is best understood to mean '[a]n official transcript of a public record, authenticated as a true copy for use as evidence.'" *In re Processed Egg Prods. Antitrust Litig.*, No. 08-MD-2002, 2022 WL 2467075, at *4 (E.D. Pa. July 6, 2022) (quoting *Exemplification, Black's Law Dictionary*). In light of that definition, the Eastern District held that a litigant could not tax costs for "certain consultant's fees, production studio fees, syncing of certain audio and visual representations, and the cost of a disc drive" because none of those items

---

$1,549.71. (ECF No. 160-10 at 64–84). Therefore, the Court cannot find that this $1,549.71 falls within the ambit of Section 1920, and the Court will not permit Mr. Pirl to tax this amount to Mr. Ringling.

[21] The Court notes that subsection (4) is the only portion of Section 1920 that would potentially provide a basis for Mr. Pirl to tax these costs to Mr. Ringling. 28 U.S.C. § 1920. The lone exception is the cost of printing black and white documents, which the Court finds that Mr. Pirl may tax to Mr. Ringling under either Section 1920(3) or Section 1920(4).

constituted costs of "'exemplification' within the meaning of § 1920(4)[.]" *Id.* Along those same lines, the Third Circuit has cited with approval the following language from the Ninth Circuit: "'[s]ection 1920(4) speaks narrowly of '[f]ees for exemplification and copies of papers,' suggesting that fees are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production.'" *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 674 F.3d 158, 169 (3d Cir. 2012) (quoting *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989), *overruled in part on other grounds by Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1363 (9th Cir. 1991) (en banc)).

Finally, with respect to "making copies," in *Race Tires*, the Third Circuit narrowly defined that term as "the actual photocopying of documents to produce a duplicate, or the digital equivalent thereof[.]" *In re Processed Egg Prods.,* 2022 WL 2467075, at *3 (citing *Race Tires*, 674 F.2d at 166–67) (holding that, with respect to the expenses before it, only the "conversion of native files to TIFF (the agreed-upon default format for production of ESI), and the scanning of documents to create digital duplicates are generally recognized as the taxable 'making copies of material.'").

### ii. Mr. Pirl's Specific Requests

Applying these principles to Mr. Pirl's payments to Precise Trial, the Court finds that Mr. Pirl plainly cannot tax Mr. Ringling for the following nine items under Section 1920(4): (1) trial consulting (for which Mr. Pirl paid $8,000.00); (2) out-of-pocket expenses for Precise's technician (for which Mr. Pirl paid $454.70); (3) travel time for Precise's technician (for which Mr. Pirl paid $450.00); (4) mileage for Precise's technician (for which Mr. Pirl paid $235.18); (5) tech time (for which Mr. Pirl paid $300.00); (6) client meeting (for which Mr. Pirl paid $100.00); (7) synchronization (for which Mr. Pirl paid $50.00); (8) project management (for which Mr. Pirl paid

$485.00), and (9) clip creation (for which Mr. Pirl paid $100.00). (ECF No. 160-10 at 83–84). All of these expenses either fall outside the ambit of Section 1920(4) or are too vague for the Court to determine whether they are taxable costs under that section. *In re Processed Egg Prods.*, 2022 WL 2467075, at *4 (disallowing costs for "consultants' fees, production studio fees, syncing of certain audio and video representations, and the cost of a disc drive"); *Warner Chilcott Laboratories*, 2013 WL 1876441, at *17 (disallowing costs for project management charges and charges for graphic design and consultation). Therefore, the Court finds that Mr. Pirl may not tax Mr. Ringling for any of these nine expenses.

That leaves the Court to consider the following five charges: (1) graphic design, (2) processing, (3) BW print, (4) tabs, and (5) 2″ 3-ring binders.

Turning first to graphic design, this charge stems from three services performed by Precise Trial: (1) "[r]evisions to Pirl [d]emonstratives and video, creation of new Demo 3 (using Exhibit 12)[,]" for which Mr. Pirl paid $562.50; (2) "[r]evised [d]emo 2[,]" for which Mr. Pirl paid $56.25; and (3) "[c]apture and formatting of USMC web pages, loaded exhibits [i]nto presentation software[,]" for which Mr. Pirl paid $148.50. (ECF No. 160-10 at 83). Because the first two charges reference alterations to exhibits, they appear to constitute the type of "intellectual effort" that is not taxable under Section 1920(4), rather than the "physical preparation and duplication of documents" that is taxable under that provision. *Race Tires*, 674 F.3d at 169. Therefore, the Court will not permit Mr. Pirl to tax these costs.

However, with respect to the third charge, although the Court is unsure what is meant by "capture and formatting of USMC web pages," the Court finds that "load[ing] exhibits [i]nto presentation software" (for use at trial) is similar to the "scanning of documents to create digital

-46-

duplicates" that the Third Circuit permitted as a taxable cost in *Race Tires. Id.* at 167. Therefore, because loading exhibits into presentation software for use at trial appears to be half of this expense, the Court permits Mr. Pirl to tax Mr. Ringling $74.25 for these activities.

Turning to the charge for processing, Mr. Pirl paid Precise Trial $812.50 for printing and assembling exhibit binders; printing updates for his attorneys' binders; printing copies for the exhibit copy binder; processing updates and replacements to the database; and burning four discs for Exhibit 52.[22] (ECF No. 160-10 at 83). In deciding whether these expenses are taxable, the Court first notes that Mr. Pirl paid Precise Trial *separately* for the cost of making black and white copies of exhibits. (*Id.*). Therefore, the Court finds that the processing charge is primarily for activities like assembling exhibit binders and processing updates.

In deciding whether these services constitute taxable costs under Section 1920(4), the Court finds the following language from *Race Tires* instructive:

> The process employed in the pre-digital era to produce documents in complex litigation … involved a number of steps essential to the ultimate act of production. First, the paper files had to be located. The files then had to be collected, or a document reviewer had to travel to where the files were located. The documents, or duplicates of the documents, were then reviewed to determine those that may have been relevant. The files designated as potentially relevant had to be screened for privileged or otherwise protected material. Ultimately, a large volume of documents would have been processed to produce a smaller set of relevant documents. *None of the steps that preceded the actual act of making copies in the pre-digital era would have been taxable.*

674 F.3d at 169 (emphasis added). In a similar way, because this processing charge is primarily for activates surrounding the making of copies, but not the actual making of copies themselves,

---

[22] Insofar as Precise Trial indicated that it "burned [four] discs *for* exhibit 52[,]" the nature of this expense is unclear to the Court, and the Court therefore disallows it. (ECF No. 160-10 at 83) (emphasis added).

the Court finds that the processing charge is not a taxable cost under Section 1920(4). Therefore, the Court will not permit Mr. Pirl to tax this expense to Mr. Ringling.

Turning to the $229.68 ($0.12 per copy) that Mr. Pirl paid Precise Trial to print black and white copies of exhibits for trial, (ECF No. 160-10 at 83), the Court finds that this is plainly a taxable cost under Section 1920(4).[23] *Warner Chilcott*, 2013 WL 1876441, at *11–13 (permitting a party to tax the cost of black and white copies of documents that were charged at a rate of $0.12 per page).

Turning finally to the tabs and 3-ring binders (for which Mr. Pirl paid $159.25), (ECF No. 160-10 at 83), there is authority suggesting that these items constitute attorneys' overhead rather than taxable costs. *Warner Chilcott*, 2013 WL 1876411, at *12 ("Plaintiffs correctly observe that the outside vendors' invoices include fees for items such as … tabs [and] binders …. These charges constitute attorney's overhead and as such, are not taxable."); *Yong Fang Lin v. Tsuru of Bernards, LLC*, No. 10-CV-2400, 2011 WL 2680577, at *4 (D.N.J. July 8, 2011) (finding that binders are general overhead costs that are not taxable under Section 1920). Therefore, because Mr. Pirl has not pointed the Court to any contrary authority, the Court finds that Mr. Pirl may not tax these expenses to Mr. Ringling under Section 1920.

In short, out of the money that Mr. Pirl paid to Precise Trial, the Court permits him to tax $303.93 to Mr. Ringling.

---

[23] This may also constitute a taxable cost under Section 1920(3).

All told, the Court finds that Mr. Pirl may tax $1,367.58 ($325.00 relative to Dr. White's expert testimony, $300.00 relative to the subpoenas, $438.65 for the two transcripts, and $303.93 of the money Mr. Ringling paid to Precise Trial) to Mr. Ringling in costs under Section 1920.

Therefore, the Court grants in part and denies in part Mr. Pirl's "Petition for Attorneys' Fees and Expenses[.]" (ECF No. 160). Specifically, the Court awards Mr. Pirl $15,001.50 in attorneys' fees (of which Mr. Pirl must pay $2,500.25 of the judgment) and $1,367.58 in costs.

## V.   Mr. Pirl's "Motion for Sanctions Under Rule 11(B)(1)" (ECF No. 172)

Finally, the Court turns its attention to Mr. Pirl's Motion for Sanctions. (ECF No. 172).

In his Motion, Mr. Pirl argues that sanctions are warranted against Mr. Ringling because Mr. Ringling has submitted filings for the purpose of unnecessary delay or needlessly increasing the cost of litigation. (*Id.* at 4). Specifically, Mr. Pirl notes the following: (1) trial in this matter concluded on August 18, 2022; (2) on September 27, 2022, Mr. Ringling filed an untimely motion, asking for additional time to file his Brief in Support of his Renewed Motion for Judgment as a Matter of Law so that he could utilize the trial transcripts in filing that Brief; and (3) as of October 21, 2022, Mr. Ringling had not yet contacted the Court Reporter to order a transcript of the trial. (*Id.* at 2–3). Mr. Pirl contends that Mr. Ringling's actions in requesting an extension of time to file a Brief so that he could have the trial transcript when writing that Brief, and then failing to request the transcript for two months constitutes sanctionable conduct. (*Id.* at 3–4). Mr. Pirl also asserts that Mr. Ringling urged the Court to wait to rule on Mr. Pirl's Petition for Attorneys' Fees and Costs until after it ruled on Mr. Ringling's Renewed Motion for Judgment as a Matter of Law (which Mr. Ringling asked the Court to wait to rule upon until he obtained the trial transcript), thereby unduly delaying the conclusion of this case. (*Id.* at 4).

-49-

In response, Mr. Ringling argues that the Court should deny Mr. Pirl's Motion for Sanctions because Mr. Pirl did not comply with the 21-day safe harbor provision contained in Rule 11. (ECF No. 175 at 1). Further, Mr. Ringling asserts that "[t]here was no intent whatsoever to cause unnecessary delay or increase the cost of litigation" on his part. (*Id.* at 2).

The Third Circuit has explained that Federal Rule of Civil Procedure 11(c)(2) requires "that '[a] motion for sanctions [] be made separately from any other motion' and 'be served under Rule 5, but … not be filed or be presented to the Court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriate corrected within 21 days after service.'" *Morning Sun Books, Inc. v. Division Point Models, Inc.*, 826 F. App'x 167, 171 (3d Cir. 2020) (quoting FED. R. CIV. P. 11(c)(2)); *see also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008) ("If the twenty-one day period is not provided, the motion must be denied."). Here, Mr. Pirl served his Motion for Sanctions on Mr. Ringling on the same date that he filed it in Court. (ECF No. 172 at 6). Therefore, the Court denies Mr. Pirl's Motion because it does not comply with Rule 11(c)(2). *Higgins v. Wells Fargo Bank, N.A.*, No. 15-CV-1409, 2017 WL 1086327, at *6 (D.N.J. Mar. 21, 2017) ("As Plaintiff failed to provide the twenty-one day period, the motion for sanctions is denied.").

Further, even if the Court were to reach the merits of Mr. Pirl's Motion, it would still deny his request for sanctions. To be sure, Mr. Ringling's delay in ordering the trial transcript cannot be described as perfectly diligent. However, having heard Mr. Ringling's explanation for his actions, both in his Response to Mr. Pirl's Motion and at the status conference before this Court on November 28, 2022, (ECF No. 176), the Court finds that Mr. Ringling's failure to inquire as to whether he needed to order the transcript and how to go about doing so for approximately two months does not meet the threshold for sanctions under Rule 11—the Court cannot find that Mr.

Ringling acted unreasonably under the circumstances. *Teamsters Local Union No. 430 v. Cement Express, Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) ("The standard for testing conduct under Rule 11 is reasonableness under the circumstances …. Rule 11 is intended only for exceptional circumstances."). Indeed, the Court finds that Mr. Pirl has failed to show that Mr. Ringling made a submission to the Court *for the purpose* of causing unnecessary delay or needlessly increasing the cost of litigation. FED. R. CIV. P. 11(b)(1).

## VI.    Conclusion

For the foregoing reasons, the Court grants in part and denies in part Mr. Ringling's "Motion for Judgment as a Matter of Law or Remittitur to Reduce Punitive Damages[.]" (ECF No. 162). Specifically, the Court denies Mr. Ringling's Motion insofar as he requests judgment as a matter of law, but the Court grants Mr. Ringling's request for a reduction in the jury's award of punitive damages. As a matter of law, the Court finds that it is appropriate to award Mr. Pirl $1.00 in nominal damages and $10,000.00 in punitive damages in this case.

With respect to Mr. Pirl's "Petition for Attorneys' Fees and Expenses[,]" (ECF No. 160), the Court grants in part and denies in part Mr. Pirl's request for attorneys' fees, finding that it is appropriate to award him the maximum amount permitted by the PLRA in this case—$15,001.50. The Court further finds that Mr. Pirl must pay $2,500.25 of the judgment that he obtained to his attorneys to help satisfy the award of attorneys' fees. Finally, the Court finds that Mr. Pirl may tax Mr. Ringling for $1,367.58 in costs under 28 U.S.C. Section 1920.

Lastly, the Court denies Mr. Pirl's "Motion for Sanctions Under Rule 11(B)(1)" (ECF No. 172) because Mr. Pirl failed to comply with the 21-day safe harbor provision. Further, even if Mr.

Pirl had complied with that provision, the Court would still deny his Motion because he has not demonstrated that Mr. Ringling's conduct warrants sanctions under Rule 11.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEMETRIUS PIRL, | ) | |
| | ) | Case No. 3:19-cv-208 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| SERGEANT GARY RINGLING, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER</u>

**AND NOW**, this _____ 9th day of March, 2023, upon consideration of:

1. Defendant Gary Ringling's "Motion for Judgment as a Matter of Law or Remittitur to Reduce Punitive Damages" (ECF No. 162);

2. Plaintiff Demetrius Pirl's "Petition for Attorneys' Fees and Expenses" (ECF No. 160); and

3. Mr. Pirl's "Motion for Sanctions Under Rule 11(B)(1) (ECF No. 172);

and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Court:

1. **GRANTS IN PART AND DENIES IN PART** Mr. Ringling's "Motion for Judgment as a Matter of Law or Remittitur to Reduce Punitive Damages[.]" (ECF No. 162). Specifically, the Court denies Mr. Ringling's request for judgment as a matter of law. However, as a matter of law, the Court reduces the jury's award of punitive damages in this case from $25,000.00 to $10,000.00. Therefore, it is **HEREBY ORDERED** that the Clerk shall enter an Amended Judgment in this case in favor of Mr. Pirl and against

Mr. Ringling in the amount of $1.00 in nominal damages and $10,000.00 in punitive damages.

2. Further, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Pirl's "Petition for Attorneys' Fees and Expenses[.]" (ECF No. 160). Specifically, **IT IS HEREBY ORDERED** that Mr. Pirl is awarded attorneys' fees in the amount of $15,001.50. **IT IS FURTHER ORDERED** that Mr. Pirl shall pay $2,500.25 of the judgment to his attorneys as part of the award of attorneys' fees in this case. **IT IS FURTHER ORDERED** that Mr. Ringling shall pay the difference of $12,501.25. **IT IS FURTHER ORDERED** that Mr. Pirl may tax $1,367.58 in costs to Mr. Ringling.

3. Finally, the Court **DENIES** Pirl's "Motion for Sanctions Under Rule 11(B)(1)[.]" (ECF No. 172).

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**